**CASE NO. 10-2151**

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

| | |
|---|---|
| LYNN McDONALD-CUBA, | ) |
| | ) |
| Plaintiff-Appellant | ) |
| | ) |
| v. | ) |
| | ) |
| SANTA FE PROTECTIVE SERVICES, INC., | ) |
| | ) |
| Defendant-Appellee | ) |

_____

On Appeal from the United States District Court
For the District of New Mexico
The Honorable Judge William P. Johnson
District of N.M. Case No. 09-cv-554 WJ/DJS

_____

**PRINCIPAL AND RESPONSE BRIEF
OF APPELLEE SANTA FE PROTECTIVE SERVICES, INC.**

_____

Respectfully Submitted,

David A. Garcia
Mickey D. Barnett
1905 Wyoming Blvd. NE
Albuquerque, NM 87112
david@theblf.com
mickey@theblf.com

October 18, 2010             Attorneys for Appellee

Appellee does not request oral argument

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, Defendant-Appellee Santa Fe Protective Services, Inc. certifies that it has no parent corporation and that no publicly held corporation owns ten percent or more of its stock.

/s/David A. Garcia_____
David A. Garcia

# **TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT……………………….….2

TABLE  OF CONTENTS………………………………………………3

TABLE OF AUTHORITIES…………………………………………..….4

STATEMENT OF FACTS………………………………….…………..5

SUMMARY OF ARGUMENT……………………………….………...7

ARGUMENT………………………………………………..……….7-20

I.    THE DISTRICT COURT'S DISMISSAL OF McDONALD-CUBA'S POST-EMPLOYMENT RETALIATION CLAIMS WAS TIMELY AND PROPER.

      A.    McDonald-Cuba Suffered No "Procedural Prejudice", and Fully Briefed the Issue of Post-Employment Retaliation in the Summary Judgment Proceeding.

      B.    The District Court Properly Granted Summary Judgment on Plaintiff's Title VII Post Employment Retaliation Claim.

II.   THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT ON MCDONALD-CUBA'S CLAIMS THAT HER TERMINATION WAS PRETEXTUAL.

CONCLUSION………………………………………...…………………21

CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)………………22

CERTIFICATE  OF  DIGITAL  SUBMISSION  AND  PRIVACY REDACTIONS……………………………………...……....……………..22

CERTIFICATE OF SERVICE………………………...…………………..23

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Argo v. Blue Cross & Blue Shield of Kansas,*
452 F.3d 1193, 1202 (10th Cir. 2006): ............................................................ 16

*Green v. New Mexico,*
420 F.3d 1189, 1195-1196 (10th Cir. 2005) .................................................... 23

*Hynes v. Squillace,*
143 F.3d 653, 656-57 (2d Cir. 1998) .............................................................. 11

*Ortiz v. Norton,*
254 F.3d 889 (10th Cir. 2001) ........................................................................ 23

*Timmerman v. U.S. Bank,* N.A.,
483 F.3d 1106 ................................................................................................ 11

*Turner v. Public Service Co. of Colorado,*
563 F.3d 1136, 1144 (10th Cir. 2009) ............................................................ 20

## **STATEMENT OF FACTS**[1]

Plaintiff, Lynn McDonald-Cuba ("McDonald-Cuba") was employed by Santa Fe Protective Services ("SFPS") from February 9, 2005 to December 7, 2007, the date her employment was terminated. During her employment she received substantial salary increases, bonuses, accommodations regarding fringe benefits, and she was twice promoted to a higher position.

McDonald-Cuba was ultimately promoted to be a Director of the Company. SFPS bids on contracts for security services in a very competitive bidding arena. SFPS bids on contracts for security services in a very competitive bidding arena. During her tenure as a Director, up to and including December 5, 2007, she had direct access to confidential business and bidding information of the company. On or about December 5, 2007, President Christina Maki learned that McDonald-Cuba had an ownership interest in Brahma Defense Enterprise, LLC, an Albuquerque based "minority and woman owned company" ("Brahma Defense"), with McDonald-Cuba being the majority owner and point of contact. Brahma Defense, like SPFS, was in the business of supplying security services under the same Federal

---

[1] The District Court's Memorandum Opinion and Order Granting Defendant's Motion for Summary Judgment (Doc. 95) contains a detailed enumeration of the Undisputed Facts of this case at pp. 2—6. No dispute of the Court's facts has been raised in this appeal.

contract set aside program, and used the same NAICS industrial classification code.[2]  Upon learning about McDonald-Cuba's ownership of that business and the competing character of that business, Christina Maki terminated McDonald-Cuba from her employment with SFPS on December 7, 2007. There is no dispute that McDonald-Cuba owned a majority of Brahma Defense as of the time she was terminated.

McDonald-Cuba was treated generously by SFPS, was never unlawfully discriminated against and was justifiably terminated.

---

[2] NAICS is the North American Industry Classification System which uses standard identification numbers for Government procurement.  The number for security guards is 561612.

## SUMMARY OF ARGUMENT

McDonald-Cuba claims that summary judgment on her post-employment retaliation claim was "sua sponte" and caused her "procedural prejudice". However, McDonald-Cuba had the opportunity to brief, and did brief, this issue in her Response to SFPS's Motion for Summary Judgment. Moreover, McDonald-Cuba's alleges that SFPS's Counterclaim before the District Court constituted "retaliation" under Title VII. Although the Tenth Circuit has stated that whether such a claim might exist is an "interesting question", that cause of action has neither been recognized nor defined.

McDonald Cuba was properly terminated for cause. McDonald-Cuba cannot show any evidence that SFPS's stated reason for her discharge from employment was pretextual. Therefore summary judgment was appropriate as to McDonald-Cuba's discrimination claim based on her discharge.

## ARGUMENT

## I.    THE DISTRICT COURT'S DISMISSAL OF McDONALD-CUBA'S POST-EMPLOYMENT RETALIATION CLAIMS WAS TIMELY AND PROPER.

### A. McDonald-Cuba Suffered No "Procedural Prejudice", and Fully Briefed the Issue of Post-Employment Retaliation in the Summary Judgment Proceeding.

As an initial matter, SFPS notes that McDonald-Cuba briefed the issue of post-employment retaliation in her Response to SFPS' Motion for Summary Judgment (Doc. 83).  The Response contains about nineteen pages of text in the body of the brief.  Of those nineteen pages, over four pages (the last paragraph of page 15 through page 19) brief the post-employment retaliation issue including the purported facts and precedent that she claims support her allegations.  McDonald-Cuba's argument that she was surprised or prejudiced by the District Court's decision on this matter is specious.

McDonald-Cuba herself had the opportunity to brief this issue as to the law and the facts, did brief the issue, and did come forward with evidence. McDonald-Cuba's briefing was done for the express purpose of preserving the post-employment retaliation claims in question, and invited a decision by the District Court.  *See*, McDonald-Cuba's Response to SFPS' Motion for Summary Judgment (Doc. 83), pp. 15-19.

Facing summary judgment as to all claims, McDonald-Cuba would have been highly motivated to fully and completely brief this issue. *See*, e. g., *Hynes v. Squillace*, 143 F.3d 653, 656-57 (2d Cir. 1998) (noting that since the plaintiff had moved for summary judgment on a retaliation claim before the magistrate judge, granting the defendants summary judgment *sua sponte* on the retaliation claim was not prejudicial because the plaintiff had "had every incentive to submit all evidence supporting his retaliation claim"). McDonald-Cuba does not even suggest what additional evidence might have been adduced, but only complains that some discovery was still pending when summary judgment was entered.  Opening Brief at p. 18.

In any event, asserting a cause of action under Title VII for alleged post-employment retaliation by the filing of a counterclaim is at best a speculative undertaking.  In both her Response to SFPS' Motion for Summary Judgment (Doc. 83) and in her Opening Brief on this appeal, McDonald-Cuba relies on dicta contained in *Timmerman v. U.S. Bank*, N.A., 483 F.3d 1106, 1123 to establish her alleged cause of action.  As the District Court noted, *Timmerman* merely states that the issue poses an "interesting question".[3]  The

---

[3] "While it is certainly an interesting question whether the filing of counterclaims in response to discrimination claims brought by a former employee constitutes an adverse employment action, that question, along with the disputed causation issue, need not be decided in this case."  *Timmerman*, 1106 F.3d at 1123.

dicta relied on does not create a cause of action and, aside from the facts of the *Timmerman* case itself, provides little guidance as to the application of such a cause of action. The District Court's Memorandum Opinion and Order Granting Defendant's Motion for Summary Judgment (Doc. 95) at page 26 carefully considers the state of the law, including the *Timmerman* case. It is not error for the District Court to grant summary judgment simply based on the fact that the cause of action asserted is not recognized.

> **B.     The District Court Properly Granted Summary Judgment on Plaintiff's Title VII Post-Employment Retaliation Claim.**

Section I.B of McDonald-Cuba's Opening Brief again sets forth contentions that the District Court should not have ruled on her "post-employment" retaliation claim. McDonald-Cuba's lawsuit, however, included these claims. As set forth above, legal precedent and standards for post-employment retaliation based on the counterclaim were briefed for the District Court in the papers McDonald-Cuba filed responding to SFPS' Motion for Summary Judgment. *See*, McDonald-Cuba's Response to SFPS' Motion for Summary Judgment (Doc. 83), pp. 15-19. Moreover, McDonald-Cuba acknowledges making "presentation of Ms. Maki's testimony in support of the unfounded nature of the Counterclaim" in responding to the Motion for Summary Judgment. Opening Brief at p. 27.

In the Opening Brief, Plaintiff inaccurately characterizes Ms. Maki's deposition testimony, and other deposition testimony, by implying that the Opening Brief contains a comprehensive and fair summary of all of the deposition testimony supporting the dismissed Counterclaim. *See*, e.g. McDonald-Cuba's Opening Brief at p. 14-15 (purported summary of Christina Maki deposition in Statement of Facts), p. 27-28.

In order to support her contentions about the availability of a cause of action based on SFPS's filing of an allegedly retaliatory counterclaim, McDonald-Cuba provides a massive single-spaced quote from the Magistrate Judge's Memorandum & Order Granting in Part and Denying in Part Plaintiff's Motion to Compel Defendant's Responses to Plaintiff's Second Requests for Production (Doc. 93). Opening Brief, pp. 23-25. The Opening Brief, however, makes no reference to the Magistrate Judge's subsequent Memorandum Opinion and Order (Doc. 94) denying another of Plaintiff's motions to compel concerning a set of contention interrogatories pertaining to SFPS' Counterclaim. The Magistrate's Opinion and Order (Doc. 94), at pp. 4-13 contains lengthy excerpts from the depositions of Christina Maki and two other individuals setting forth additional facts supporting SFPS' Counterclaim not mentioned in the Opening Brief. The depositions in question were taken by McDonald-Cuba.

SFPS will not reprint this material from the Magistrate's Opinion and Order (Doc. 94) here, although the Magistrate's Opinion and Order will be submitted in a Supplemental Appendix.  In the Memorandum Opinion and Order (Doc. 94), at p. 13, the Magistrate Judge concludes that "…<u>Defendant's responses and supplemental responses to Interrogatories Nos. 2 and 3 and the deposition testimony of Christina and Butch Maki and Liming clearly set forth the bases for Defendant's Counterclaim</u>." (emphasis added).

McDonald-Cuba had a full and fair opportunity to brief the post-employment retaliation claim issues.  She did not present any evidence concerning the basis for SFPS' Counterclaim other than carefully selected excerpts from Christina Maki's deposition, even though other relevant evidence had been adduced.  Though she complains that she was unable to obtain certain discovery due to the granting of summary judgment, McDonald-Cuba does not even generally articulate what she would have expected that discovery to add to the proceeding.

McDonald-Cuba was not surprised by, and suffered no prejudice because of, the District Court's grant of summary judgment as to her post-employment claims.

**II.     The District Court Properly Granted Summary Judgment on McDonald-Cuba's Claims That Her Termination Was Pretextual**

When McDonald-Cuba originally filed her lawsuit in the trial court, she brought a pay discrimination claim.   Both McDonald-Cuba's original Complaint (Doc. 1) and her Amended Complaint (Doc.11) contain claims of pay discrimination.  Count I of each complaint alleges gender discrimination. The primary "gender discrimination" alleged is that two male directors received a higher pay increase in 2007 than McDonald-Cuba received that year.   See, e.g. First Amended Complaint (Doc. 11) at ¶ 11, 12 ("annual percentage pay increase disparity").   A Joint Status Report and Provisional Discovery Plan was filed in the District Court on September 8, 2009 (Doc. 18).   In the "Plaintiff's Contentions" section (authored by Plaintiff), first sentence, McDonald-Cuba states:   "Plaintiff contends that Defendant, a security services company, discriminated against her and other female employees based on gender by giving male directors of the company greater percentage bonuses than Plaintiff and other female directors …." (Doc 18) at p. 2.

At some point early in the proceeding, no later than after receiving relevant salary information from SFPS at approximately the time that the Joint Status Report was filed, McDonald-Cuba should have realized that she

had no pay discrimination claim. <u>See</u> e.g. SFPS' Motion for Summary Judgment (Doc. 65), p. 5-6. Rather than dismiss her pay discrimination claims, however, McDonald-Cuba kept asserting them. Ultimately, the District Court granted summary judgment as to those claims. McDonald-Cuba does not appeal the District Court's grant of summary judgment on her pay discrimination claims, and finally has abandoned those claims. Plaintiff now uses her list of alleged discriminatory actions (including the wholly discredited allegations of pay discrimination) to bolster arguments that the reasons given for her termination "were pretextual".

In fact, the entire argument as to McDonald-Cuba's second issue on appeal is now limited to a "Title VII discrimination claim premised on her termination." Opening Brief at page 29. The exact nature of the argument contained in the second issue is confusing and the argument is bereft of authority. For example, McDonald-Cuba nowhere sets forth the applicable legal standards in her argument pertaining to her second issue. The standard for a retaliation claim is set forth in *Argo v. Blue Cross & Blue Shield of Kansas,* 452 F.3d 1193, 1202 (10th Cir. 2006): Plaintiff must demonstrate (1) that she "engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action to be materially adverse, and (3) that a causal connection existed between the protected

14

activity and the materially adverse action." If the plaintiff establishes a prima facie case, the burden shifts to the employer to "articulate a legitimate, nondiscriminatory reason for the discharge." The burden then shifts back to the plaintiff "to demonstrate that the proffered explanation is pretext for retaliation." *Argo*, 452 F.3d at 1202-1203. McDonald-Cuba second issue on appeal pertains solely to the pretext element.

McDonald-Cuba, who occupied a position of trust at SFPS, was terminated because she had an undisclosed majority ownership interest in a company able to compete with SFPS. It is not disputed that McDonald-Cuba knew confidential information, including costing and technical information, which could help other companies bid against SFPS. It is also not disputed that McDonald-Cuba knew SFPS' labor rates, indirect rates, percentages, fee, and overhead rates, which could give an advantage to a competing company. SFPS' Motion for Summary Judgment (Doc. 65), ¶¶ 34-35. McDonald-Cuba also does not dispute that she was the majority owner of Brahma Defense. *Id.* at ¶36.

It is also not disputed that when McDonald-Cuba was terminated, her company Brahma Defense was registered with the Central Contracting Registry ("CCR") as a minority owned business and woman owned business, with a NAICS classification indicating it provided security guards and patrol

services, held out McDonald-Cuba as the primary point of contact, the past performance alternate and the government business alternate. SFPS' Motion for Summary Judgment (Doc. 65), p. 8, ¶32.

It is also not disputed that Christina Maki, President of SFPS, learned about the CCR registration status of McDonald-Cuba's company approximately one day before terminating McDonald-Cuba. *Id.* at p. 8, ¶¶30-31, 32. (no dispute as to date of termination). Under these circumstances, SFPS has easily shown a legitimate, nondiscriminatory reason for the discharge.

Accordingly, the burden is on McDonald-Cuba to show that the reason for her termination, i.e. her majority ownership of an entity listing itself as able to compete with SFPS while McDonald-Cuba occupied a position of trust at SFPS with access to confidential business information, is a pretext. The reason for termination has been consistently given by SFPS. No evidence of pretext has ever been shown.

A plaintiff can show pretext by revealing "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'

16

[citation omitted]" *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 (10th Cir. 1997).  McDonald-Cuba has not shown any weakness or implausibility in SFPS' decision to fire an employee in a position of trust with access to confidential materials for owning a competing company.  "'[M]ere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment.' [citation omitted]" *Morgan*, 108 F.3d 1323.

In determining whether pretext exists, this Court should not "act as a 'super personnel department' or second-guess [the employer's] good faith business judgments." *Turner v. Public Service Co. of Colorado*, 563 F.3d 1136, 1144 (10th Cir. 2009).  The reason for McDonald-Cuba's termination was not trivial, and demonstrates ample legitimate cause for her termination.

McDonald-Cuba's claims of pretext raises a spurious issue attempting to relate written performance evaluations to the magnitude of salary increases received by McDonald-Cuba and by other employees.  Opening Brief at p. 35-36.  Other than statements of counsel, McDonald-Cuba does not and cannot provide any evidence whatsoever that performance evaluations were in any way related to the 2007 salary increases or to anything else.

In fact, McDonald-Cuba was paid an equivalent or higher salary than her male counterparts and in addition received benefits that they did not

receive. See SFPS' Motion for Summary Judgment (Doc. 65) at pp 5-6, ¶¶11 and 22. Defendant's Motion for Summary Judgment at p. 5, 7   McDonald-Cuba does not dispute, nor could she, that Mr. Aduddel received a salary increase in excess of six percent because he had not received an increase for over a year *Id.* at ¶20.

McDonald-Cuba also did not dispute, nor could she have, that Mr. Liming received a salary increase in excess of six percent because he had assumed additional duties at SFPS, and he also had not received a pay increase in two and one-half years. The only quibble McDonald-Cuba has regarding Mr. Liming's pay increase is as to whether some or all of it can be attributed to a pay raise as opposed to a pay adjustment for the extra duties. Plaintiff's Response to SFPS' Motion for Summary Judgment at p. 2. This hairsplitting distinction, raised to attempt to create questions of fact, is not relevant.

Claims that Mr. Aduddel and Mr. Liming allegedly had conflicts of interest similar to McDonald-Cuba's. McDonald-Cuba claims that Mr. Liming had a conflict of interest due to his "holding" of licenses. However, the evidence clearly shows that Mr. Liming merely acted as a surrogate, with SFPS' permission, in the manner of a corporation's registered agent, for certain license holders in New Mexico. SFPS' Reply in Support of its Motion

18

for Summary Judgment (Doc. 88), Exhibit A at p. 135 (Deposition of Mark Liming).

The most critical distinction between Mr. Liming's conduct and McDonald-Cuba's conduct is that Mr. Liming disclosed his activity regarding the licenses to SFPS prior to his hiring, and at all times has conducted this activity with SFPS' knowledge and approval.  SFPS knew what Mr. Liming was doing.  *Id.* at pp. 147-148:20-25; 2-4, p. 167:2-9.  See also SFPS' Reply in Support of its Motion for Summary Judgment (Doc. 88) at p. 213:11-17, 20.(Deposition of Christina Maki)  On the other hand, it is not disputed that Christina Maki, the President of SFPS, only learned about the status of McDonald-Cuba's competing company a day or so before Maki terminated McDonald-Cuba.  SFPS' Motion for Summary Judgment (Doc. 65) at p. 8 ¶30. Mr. Aduddell's case is even clearer.  Most importantly, McDonald-Cuba concedes that Ms. Maki believed Mr. Aduddel's company was inactive prior to McDonald Cuba's termination.  Opening Brief at p. 33.  With this concession, it is strange that McDonald-Cuba continues to raise the issue of Mr. Aduddell.  McDonald-Cuba's argument concerning Alpha Pro's status with the Colorado Secretary of State lacks any relevance whatsoever.  Opening Brief at p. 13.  Moreover, the evidence has also shown that, because Aduddell was straightforward with SFPS, disclosed his interest, and asked, his involvement

19

in the company at issue was approved by SFPS.  SFPS' Reply in Support of its Motion for Summary Judgment (Doc. 88), Exhibit B at pp. 244-245:24-25,1,9-16.(Deposition of Christina Maki)

McDonald-Cuba also claims that her disparate treatment case is furthered by her own promotion within SFPS.  The case cited to support this novel proposition is a racial discrimination case in which the plaintiff was fired because he had been sentenced to prison.  *Ortiz v. Norton*, 254 F.3d 889 (10th Cir. 2001).  In *Ortiz*, however, the plaintiff alleged discriminatory practices in promoting Hispanics.  No such claim has been made in this case.  Moreover, a female made the decision to promote McDonald-Cuba, and the same female made the decision to terminate her.  This Court has generated some precedent suggesting that this is relevant.  *See*, *e.g. Green v. New Mexico*, 420 F.3d 1189, 1195-1196 (10th Cir. 2005).  The District Court was understated when it described the contention that McDonald-Cuba's promotion is evidence of discrimination as "absurd".  Memorandum Opinion and Order Granting Defendant's Motion for Summary Judgment (Doc. 95), p. 21.

SFPS had a legitimate and nondiscriminatory reason for terminating McDonald-Cuba.  No evidence of pretext has been shown.  Further, no link

between the above issues and McDonald-Cuba's termination has ever been argued.

## <u>CONCLUSION</u>

**WHEREFORE,** Appellee Santa Fe Protective Services respectfully requests this Court to AFFIRM in all respects the decision of the District Court granting summary judgment, and to dismiss this appeal.

Respectfully submitted,

THE BARNETT LAW FIRM

By: /s/David A. Garcia
     David A. Garcia
     Mickey Barnett
     1905 Wyoming Blvd. NE
     Albuquerque, NM  87112
     Tel:  (505) 275-3200
     Fax:  (505) 275-3837
     david@theblf.com

     Attorneys for Defendant-
     Appellee Santa Fe Protective
     Services, Inc.

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)</u>

Certificate of Compliance with Type-Volume Limitation, Typeface
Requirements, and Type Style Requirements

1. <u>Type-Volume Limitation</u>.  This brief complies with the type-volume
limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 3,050
words, excluding the parts of the brief exempted by Fed. R. App. P.
32(a)(7)(B)(iii).  I relied on my word processing software to obtain the word
count.

2.   <u>Typeface Requirements and Type Style Requirements</u>.   This brief
complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the
type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been
prepared in a proportionally spaced typeface using Microsoft Office Word
2003 SP3 in Times New Roman font, 14 point.

By:  /s/David A. Garcia
       David A. Garcia
       Attorney for Appellee Santa Fe
         Protective Services, Inc.

## CERTIFICATE OF DIGITAL
## <u>SUBMISSION AND PRIVACY REDACTIONS</u>

I hereby certify that a copy of the foregoing Appellee's Principal and
Response Brief, as submitted in digital form via the Court's ECF system, is an
exact copy of the written document filed with the Clerk and has been scanned
for viruses with the ESET NOD32 Antivirus Version 4.2.64.12, Business
Edition, virus definition file dated October 17, 2010, version 5539, and,
according to the program, is free of viruses.  In addition, I certify that all
required privacy redactions have been made.

By:  /s/David A. Garcia
       David A. Garcia
       Attorney for Appellee Santa Fe
         Protective Services, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Principal and Response Brief of Appellee Santa Fe Protective Services, Inc. was served upon counsel for Plaintiff-Appellant Lynn McDonald-Cuba by electronically filing the same through the CM/ECF electronic service on this 18th day of October, 2010.


By:     /s/David A. Garcia_____
        David A. Garcia